## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NORTH VALLEY GI MEDICAL GROUP, et al., | : | |
| | : | Case No. 1:15-cv-03268-JKB |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| PRUDENTIAL INVESTMENTS LLC, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**KRAMON & GRAHAM, P.A.**
Geoffrey H. Genth, Bar No. 08735
William J. Harrington, Bar No. 03863
One South Street
Suite 2600
Baltimore, MD 21202
ggenth@kg-law.com
wharrington@kg-law.com
Tel.: (410) 752-6030
Fax: (410) 539-1269

**DECHERT LLP**
Matthew L. Larrabee (admitted *pro hac vice*)
David A. Kotler (admitted *pro hac vice*)
Deborah Kemi Martin (admitted *pro hac vice*)
Catherine V. Wigglesworth (admitted *pro hac vice*)
1095 Avenue of the Americas
New York, NY 10036-6797
matthew.larrabee@dechert.com
david.kotler@dechert.com
deborahkemi.martin@dechert.com
catherine.wigglesworth@dechert.com
Tel.: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendant Prudential Investments LLC*

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

I.  PLAINTIFFS HAVE NOT STATED, AND CANNOT STATE, A SECTION 36(B)
    CLAIM AGAINST PI ..................................................................................................... 4

    A.  Plaintiffs Cannot State A Section 36(b) Claim Without Alleging The Arm's-
        Length Bargaining Range That Would Define An Excessive Fee ........................... 4

    B.  Plaintiffs Cannot State A Section 36(b) Claim By Challenging Only The Portion
        Of Management Fees "Retained" By PI ................................................................. 7

    C.  Plaintiffs Cannot State A Section 36(b) Claim While Ignoring Publicly-Available,
        Judicially-Noticeable Facts Regarding PI's Below-Average Fees ....................... 10

    D.  Plaintiffs Cannot State A Section 36(b) Claim By Resting On Distinguishable
        Decisions Denying Motions To Dismiss Other Section 36(b) Complaints ........... 13

II.  PLAINTIFFS' REMAINING *GARTENBERG* FACTOR ALLEGATIONS ARE BOTH
     IRRELEVANT AND INSUFFICIENT .......................................................................... 15

    A.  Plaintiffs' Unsupported Allegation Of "Significant Underperformance" By The
        Funds Cannot Salvage Their Claim ...................................................................... 15

    B.  Plaintiffs' Conclusory And Legally Unsustainable Economies Of Scale
        Allegations Cannot Salvage Their Claim .............................................................. 18

    C.  Plaintiffs' Conclusory And Legally Unsustainable Profitability Allegations
        Cannot Salvage Their Claim .................................................................................. 19

III. PLAINTIFFS FAIL TO PROVIDE A PLAUSIBLE BASIS FOR THE COURT TO
     OVERTURN THE INDEPENDENT TRUSTEES' BUSINESS JUDGMENT IN
     APPROVING THE MANAGEMENT AGREEMENTS WITH PI ................................. 19

    A.  Plaintiffs Invoke An "Inherent Conflict Of Interest" Between PI And The
        Independent Trustees That No Court Has Recognized .......................................... 20

    B.  Plaintiffs' Confusion About The "Considerable Weight" Due To The Independent
        Trustees' Considered Business Judgment Under *Jones* Further Undermines Their
        Claim ...................................................................................................................... 21

    C.  Plaintiffs Cannot Meet Their Pleading Burden By Circularly Alleging That The
        Board Lacked Independence Because PI's Fees Were Too High ........................... 23

CONCLUSION ...................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
2006 WL 74439 (S.D.N.Y. Jan. 11, 2006) ............................................................. 12

*Am. Chemicals & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*,
2014 WL 5426908 (S.D. Iowa Sept. 10, 2014) ..................................................... 10

*In re Am. Mut. Funds Fee Litig.*,
2009 WL 5215755 (C.D. Cal. Dec. 28, 2009), *aff'd sub nom. Jelinek v.
Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011) ......................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................. 7

*In re Blackrock Mut. Funds Advisory Fee Litig.*,
2015 WL 1418848 (D.N.J. Mar. 27, 2015) ........................................................... 10

*Burks v. Lasker*,
441 U.S. 471 (1979) .................................................................................... 3, 20, 21

*Chill v. Calamos Advisors LLC*,
2016 WL 1258984 (S.D.N.Y. Mar. 28, 2016) ....................................................... 19

*Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP*,
626 F. App'x 713 (9th Cir. 2015) .................................................................... 18, 19

*In re Franklin Mut. Funds Fee Litig.*,
478 F. Supp.2d 677 (D.N.J. 2007) ........................................................................ 4

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*,
528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982) ............ 8, 23

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
2016 WL 759654 (S.D. Ohio Feb. 26, 2016) ......................................................... 22

*Jones v. Harris Assocs., L.P.*,
2007 WL 627640 (N.D. Ill. Feb. 27, 2007), *aff'd*, 527 F.3d 627 (7th Cir.
2008), *vacated and remanded*, 559 U.S. 335 (2010), *aff'd*, 611 F. App'x 359
(7th Cir. 2015) .................................................................................................. 2, 5

*Jones v. Harris Assocs., L.P.*,
   559 U.S. 335 (2010) ............................................................................................*passim*

*Jones v. Harris Assocs., L.P.*,
   611 F. App'x 359 (7th Cir. 2015) .........................................................................*passim*

*Kasilag v. Hartford Investment Financial Services, LLC*,
   2016 WL 1394347 (D.N.J. Apr. 7, 2016) ............................................................*passim*

*Kenny v. Pac. Inv. Mgmt. Co. LLC*,
   2015 WL 10635505 (W.D. Wash. Aug. 26, 2015) ......................................................11

*Krinsk v. Fund Asset Mgmt., Inc.*,
   875 F.2d 404 (2d Cir. 1989) ......................................................................................22

*Marks v. Dann*,
   600 F. App'x 81 (4th Cir. 2015) ................................................................................17

*Migdal v. Rowe Price-Fleming Int'l, Inc.*,
   248 F.3d 321 (4th Cir. 2001) .....................................................................................16

*Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*,
   948 F. Supp. 2d 525 (D. Md. 2013), *aff'd*, 593 F. App'x 204 (4th Cir. 2014) ........12

*Redus-Tarchis v. New York Life Inv. Mgmt. LLC*,
   2015 WL 6525894 (D.N.J. Oct. 28, 2015) ......................................................11, 22, 23, 24

*Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*,
   2011 WL 1348324 (E.D. Va. Apr. 8, 2011) .............................................................11

*Tabankin v. Kemper Short-Term Glob. Income Fund*,
   1994 WL 30541 (N.D. Ill. Feb. 1, 1994) .................................................................12

*Walters v. McMahen*,
   684 F.3d 435 (4th Cir. 2012) ......................................................................................6

*Yates v. Mun. Mortg. & Equity, LLC*,
   744 F.3d 874 (4th Cir.), *cert. denied sub nom. Dammeyer v. Mun. Mortg. &
   Equity, LLC*, 135 S. Ct. 113 (2014) .........................................................................11

**Statutes**

15 U.S.C. § 80a-29 .........................................................................................................11

15 U.S.C. § 80a-35 .........................................................................................................16

**Other Authorities**

17 C.F.R. § 270.30b2-1 ..................................................................................................11

Securities and Exchange Comm'n, Div. of Investment Mgt., *Protecting Investors:*
    *a Half Century of Investment Company Regulation* (May 1992), *available at*
    http://www.sec.gov/divisions/investment/guidance/icreg50-92.pdf ........................................21

S. Rep. No. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897 (1970)....................................22

## **INTRODUCTION**

To state a viable Section 36(b) claim under the Supreme Court's holding in *Jones*, Plaintiffs' Complaint must contain well-pled factual allegations that the management fees PI[1] charged to the Funds are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."[2] Plaintiffs' Complaint contains no such allegations, and their opposition brief ("Opp.") fails to confront *Jones*'s controlling standard directly. Instead, Plaintiffs make passing reference to *Jones* and seek to conjure up "fact-based inquir[ies]" that they contend place their Complaint beyond the purview of a Rule 12(b)(6) motion.[3] But a fair reading of the current law confirms that the Complaint fails, as a matter of law, and without need for the Court to decide any factual issue or force PI to endure lengthy, costly, and ultimately fruitless discovery.

First, Plaintiffs fail to allege a fundamental element of any Section 36(b) claim concerning PI's management fees: the "outer bounds of arm's length bargaining" for such fees.[4] Requiring that Plaintiffs plead this elemental information for a Section 36(b) claim does not impose a "heightened pleading standard," as Plaintiffs contend; rather, it holds Plaintiffs to their legal obligation to allege the facts that are affirmatively required to support a Section 36(b) claim under the full *Jones* standard. Instead of pleading facts sufficient under the full *Jones* standard, Plaintiffs advance an abbreviated, insufficient allegation that PI's fees "bear no reasonable relationship to the services rendered" by PI. That half-standard, applied alone, fails to meet the Supreme Court's holding in *Jones* and is inconsistent with both its rationale and the stated

---

[1]    For ease of reference, PI will use the same defined terms as in its moving brief ("Br.").

[2]    *Jones v. Harris Assocs., L.P.*, 559 U.S. 335, 346 (2010) ("*Jones I*").

[3]    Opp. 2.

[4]    *Jones v. Harris Assocs., L.P.*, 611 F. App'x 359, 360 (7th Cir. 2015) ("*Jones II*").

Congressional intent behind Section 36(b).  Adopting Plaintiffs' abbreviated standard, and

thereby permitting them to state a Section 36(b) claim without alleging that PI's fees fall outside

the "range of fees" that could "have been the product of an arm's length bargain,"[5] would

necessarily require this Court to engage in what the law prohibits: rate regulation and

reasonableness reviews of mutual fund fees.  Plaintiffs' Complaint fails, as a matter of law, for

this reason alone.

Second, the fundamental premise of Plaintiffs' Complaint, i.e., that Section 36(b) permits

them to challenge just the subset of management fees "retained" by an adviser like PI, in

comparison to only those services directly rendered by the adviser, has very recently been

rejected as a matter of law.  Specifically, the only court to directly consider the issue on the

merits, in *Kasilag v. Hartford Investment Financial Services, LLC*, ruled—as a matter of law and

therefore in a manner fully applicable to the present motion—that the only legally appropriate

Section 36(b) challenge to a "manager of managers" platform is to compare the total

management fees paid by the fund to the total services provided by the fund adviser and its

authorized subadvisers.[6]  The *Kasilag* ruling and reasoning are particularly compelling in this

case, where PI and the Funds' subadvisers indisputably are all corporate affiliates.  Plaintiffs'

opposition, filed two weeks after the *Kasilag* ruling, does not address that decision.

Third, Plaintiffs cannot avoid the publicly-available information (contained in the same

public SEC filings upon which Plaintiffs' Complaint is based) that indisputably shows PI's

management fees are lower than any logical comparators.  Indeed, PI's fees indisputably are

---

[5]      *Jones I*, 559 U.S. at 346; *Jones v. Harris Assocs., L.P.*, 2007 WL 627640, at *7 (N.D. Ill. Feb. 27, 2007), *aff'd*, 527 F.3d 627 (7th Cir. 2008), *vacated and remanded*, 559 U.S. 335 (2010), *aff'd*, 611 F. App'x 359 (7th Cir. 2015).

[6]      2016 WL 1394347, at *14 (D.N.J. Apr. 7, 2016).

lower than the Funds' peers when assessed (as *Kasilag* requires) in the aggregate, and are lower even if the fee PI retains is compared to what other advisers retain when contracting for services with the same subadviser. Plaintiffs do not allege otherwise, or dispute the accuracy of such information. Under Fourth Circuit precedent, this Court can and should consider these critical and undisputed facts on this motion. Such facts come from the same public documents upon which Plaintiffs rely. Neither the law nor principles of fairness allow Plaintiffs to move into discovery on the basis of false *ipse dixit* assertions of "excessive fees," when those assertions are contradicted by the same publicly-available materials upon which the Complaint is founded.

Fourth, Plaintiffs have not pled a legally viable basis to overturn the considered business judgment of the Funds' Independent Trustees in approving annually the management fee paid by the Funds to PI. Instead, Plaintiffs reference an "inherent legal conflict" between PI and the Independent Trustees that: (a) no statute, SEC regulation, or Court has ever recognized; and (b) ignores the Supreme Court's express recognition that the Independent Trustees are the "watchdogs" who are charged with primary responsibility under the ICA for reviewing and approving PI's management fees.[7] The same type of conclusory allegations that Plaintiffs make have been rejected, as a matter of law, as "captious nitpicking."[8] They should similarly be rejected here.

Plaintiffs' opposition asks that this Court refrain from critically assessing the Complaint until after costly and lengthy discovery, simply because different courts have denied motions to dismiss in other pending Section 36(b) cases.[9] There is no basis for Plaintiffs' request. Unlike

---

[7]   *Burks v. Lasker*, 441 U.S. 471, 484 (1979).

[8]   *Kasilag*, 2016 WL 1394347, at *14.

[9]   *E.g.*, Opp. 2-3.

the cases cited by Plaintiffs, this case involves: (i) core allegations now foreclosed as a matter of law by *Jones II* and *Kasilag*; (ii) an adviser and subadvisers who are all corporate affiliates; and (iii) the indisputably below-average management fees charged by PI.

Allowing Plaintiffs into discovery in quest of a Section 36(b) claim they do not—and cannot—properly plead would "violate a stated intent of the drafters of [Section 36(b)] . . . to prevent the harassment of investment advisors by ill-founded or nuisance law suits, the so-called strike suit."[10]  Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

## ARGUMENT

### I.   PLAINTIFFS HAVE NOT STATED, AND CANNOT STATE, A SECTION 36(B) CLAIM AGAINST PI

Plaintiffs properly concede that to prevail on their Section 36(b) claim, they must prove that PI's management fees are "so disproportionately large that [they] bear[] no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining."[11]  Yet in order to avoid confronting this critical burden, Plaintiffs offer a series of mischaracterizations of the governing Section 36(b) caselaw and basic pleading principles.

#### A.   Plaintiffs Cannot State A Section 36(b) Claim Without Alleging The Arm's-Length Bargaining Range That Would Define An Excessive Fee

Foremost among Plaintiffs' legal mischaracterizations is their threshold contention that their Complaint passes muster because they "need not plead any particular fact, or set of facts" to state a Section 36(b) claim.[12]  Settled precedent says otherwise: Plaintiffs cannot proceed to discovery without first pleading the necessary elements of a Section 36(b) claim.  This prerequisite—that a plaintiff plead facts plausibly supporting the elements of a claim—is neither

---

[10]   *In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp.2d 677, 687 (D.N.J. 2007).

[11]   Opp. 11.

[12]   *Id.*

specific to Section 36(b) nor is it the "heightened pleading standard" that Plaintiffs suggest.[13] Rather, it is a foundational requirement established and reinforced by Supreme Court precedent.

As the Supreme Court has explained, a court considering a motion to dismiss must "begin by taking note of the elements a plaintiff must plead to state a claim."[14] Only after identifying the elements of the claim at issue may a court appropriately evaluate whether the complaint alleges facts necessary to state that claim.[15] Under *Jones*, the *sine qua non* of a Section 36(b) claim is the allegation that the challenged fee is beyond the relevant arm's-length "bargaining range."[16] As the *Jones* Court observed, "the range of fees that might result from arm's-length bargaining" is the appropriate "benchmark for reviewing challenged fees."[17] Hence, absent allegations that PI's fee exceeds the amount that could have resulted from arm's-length bargaining, no Section 36(b) claim against PI exists. Because Plaintiffs have not alleged facts setting forth the "range of fees" that could have resulted from arm's-length bargaining, they have failed to plead that PI's fees could not have been "the product of arm's length bargaining."

Plaintiffs make no effort to allege the "bargaining range" for PI's management fees. Plaintiffs do not allege that any such range exists, let alone allege how to define it, conceptually, theoretically, or numerically. Instead, Plaintiffs make the conclusory assertion that the portion of the management fees PI retains (roughly half)[18] is "disproportionately large" because PI

---

[13]     *Id.* at 3, 11.

[14]     *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).

[15]     *Id.* at 676-78.

[16]     *Jones I*, 559 U.S. at 346

[17]     *Id.* at 347. *Accord Jones*, 2007 WL 627640, at *7 (under Section 36(b)'s "arm's-length bargain" requirement, "there is no single outcome that can be expected; instead, there is a range of acceptable results.").

[18]     Opp. 15. Plaintiffs misleadingly state that PI's retained portion of the total management fee is "more than twice" the portion paid to the affiliated subadvisers (*id.* at 26-27), but their description is

delegated portfolio management services to subadvisers (albeit as expressly provided for in the SEC Order and the Management Agreements[19]). This allegation is insufficient to state a claim under *Jones* because it does not contain <u>facts</u> setting forth the "bargaining range" for advisory fees, nor can it support the assertion that PI's fees are beyond any such range. Plaintiffs' comparison of PI's fees to the fees paid to the Funds' subadvisers[20] does not constitute an allegation of the bargaining range required by *Jones*. Nor is that comparison logically or legally sufficient to state a claim that PI's fees are outside any such range.

In their further effort to circumvent *Jones*, Plaintiffs suggest that PI is seeking to impose new, unwarranted or "heightened" pleading requirements on Plaintiffs.[21] To the contrary, PI is holding Plaintiffs to their actual pleading standard. As recognized by the Fourth Circuit, although Plaintiffs "need not 'forecast' evidence sufficient to prove the elements of the claim," in order to impose the cost and burdens of discovery on PI, they do have to "allege sufficient facts to establish those elements."[22] Plaintiffs' requested ruling on this motion—one stating in effect that they may succeed on a Section 36(b) claim without alleging that the challenged management fees fall outside a plausibly-alleged "bargaining range" for such fees—would have this Court do what the Supreme Court's ruling in *Jones* prohibits: "engage in rate regulation" by "assess[ing] the fairness or reasonableness of advisers' fees."[23] For this reason alone, Plaintiffs'

---

belied by the allegation in their Complaint showing that PI retained approximately half of the total management fees and its affiliated subadvisers retained the other half. *Cf.* Compl. ¶¶ 37-43.

[19]   Br. 7, 13-16.

[20]   Opp. 26; Compl. ¶ 44.

[21]   *E.g.,* Opp. 3, 11, 33.

[22]   *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citations omitted).

[23]   *Jones II*, 611 F. App'x at 360-61.

failure to plead a plausible "bargaining range" for PI's management fees is fatal to Plaintiffs' claim at the pleadings stage.[24]

### B.   Plaintiffs Cannot State A Section 36(b) Claim By Challenging Only The Portion Of Management Fees "Retained" By PI

The second legal failing of Plaintiffs' Complaint is that its fundamental (yet unsupported) assertion that PI itself "performed almost no services" for the Funds yet retained approximately half of the total management fees does not, without more, state a claim under Section 36(b).[25] This generic attack on the "manager of managers" model, a structure that benefits the Funds' tens of thousands of shareholders and has been approved on two different occasions by the SEC (and on more than 200 different occasions across the industry), still fails as a matter of law and on the conclusory allegations in the Complaint, for all of the reasons set forth in Point I.C. of PI's moving brief.  Indeed, Plaintiffs offer no substantive response to PI's demonstration that, as the Management and Subadvisory Agreements make clear, PI both renders important services to the Funds and bears overall responsibility for <u>all</u> of the subadvisory services provided to the Funds.

Indeed, this theory was just rejected by a court in another "manager of managers" case. The *Kasilag* ruling rejected Plaintiffs' core assertion that a Section 36(b) claim can be premised only on the services performed and fees received by the adviser, to the exclusion of services performed and fees received by a subadviser.  As Judge Bumb of the District of New Jersey held in *Kasilag*, the proper legal analysis of a Section 36(b) challenge in a "manager of managers"

---

[24]    This conclusion is in keeping with the pleading requirements established by the Supreme Court, which emphasize "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with)" the alleged wrongful conduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotations omitted; dismissing claim where the plaintiff alleged facts that were equally as consistent with lawful conduct as with unlawful conduct).

[25]    *E.g.*, Opp. 11-16.

case requires that the court "consider both the services performed by [the subadviser] in its

capacity as sub-adviser and the services performed by the [adviser] as adviser."[26]   Then, these

total "combined services should be measured against the totality of the advisory fee."[27]

    *Kasilag*'s reasoning is instructive.   The *Kasilag* court began by noting that the

management agreements between the funds-in-suit and the adviser "explicitly permitted the

[adviser] to seek sub-advisers," and then reasoned that "[i]t would be a strange holding to rule

that the nature or quality of the services provided by the [adviser] were inferior solely because

they were contracted out to [a subadviser], when the parties acknowledged this as a possibility in

their initial contract."[28]   The court further observed that "[t]he plain fact is, as part of the Board's

bargain with the [adviser], the performance of the duties ultimately tasked to [the subadviser]

was secured."[29]   Accordingly, "[d]isregarding those services solely because the [adviser] made

the permissible business decision that they were better or more efficiently (or even more

inexpensively) performed by [the subadviser] is non-sensical."[30]   Or, "what's the difference to

the Funds if the [adviser] perform[s] the services directly or by way of a sub-adviser?"[31]

    Although the *Kasilag* decision was issued on summary judgment, its application to the

present case does not require the resolution of any disputed or even disputable facts.   *Kasilag*

relied on plain language in the management agreement specifically permitting the adviser to

---

[26]     *Kasilag*, 2016 WL 1394347, at *15. *See Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1049 (S.D.N.Y. 1981) ("Nothing in Section 36(b) obligates this Court, in assessing the fairness of the investment advisory compensation, to restrict its vision only to those services performed directly by [the adviser]."), *aff'd*, 694 F.2d 923 (2d Cir. 1982).

[27]     *Kasilag*, 2016 WL 1394347, at *15.

[28]     *Id.*

[29]     *Id.*

[30]     *Id.*

[31]     *Id.*

retain subadvisers and the *Gartenberg* district court's analysis,[32] both of which are equally appropriate sources for this Court to consider on the present motion. Plaintiffs here also concede (as they must) that the Management Agreements between the Funds and PI expressly permit PI to retain subadvisers to assist in providing services to the Funds.[33] *Kasilag*'s logic is particularly compelling here, where the relevant subadvisers are wholly-owned affiliates of, and share a common corporate parent with, the adviser. Under such indisputable facts, there is no answer to Judge Bumb's rhetorical question—"What's the difference?" Indeed, discovery in search of any "difference" would lead nowhere, particularly given that PI and the subadvisers are all corporate affiliates.[34]

There is no fact issue that should delay this Court from concluding that Plaintiffs cannot state a Section 36(b) claim by looking only to the portion of the management fees retained by PI and the services directly provided by PI while ignoring the fees paid and services procured for the Funds through PI's use of affiliated subadvisers.[35] This is yet another basis to dismiss the Complaint in its entirety as a matter of law, without any further proceedings.

---

[32]   *Id.* (noting that the *Gartenberg* court considered "not only services provided by each defendant in relation to their respective fee, but also those performed by 'closely related entities whose functions intimately impinge on one another,'" and reasoning that "[t]here is no reason here to consider [the subadviser's] services any differently") (quoting *Gartenberg*, 528 F. Supp. at 1049).

[33]   Opp. 5-6, 19.

[34]   Moreover, although the *Kasilag* court ultimately denied summary judgment based on some narrow remaining disputed fact issues specific to that case, the legal rejection of the premise of the "manager of managers" challenge upon which the present Complaint is based is fully applicable here, especially given Plaintiffs' utter failure to allege a bargaining range for PI's fees.

[35]   Although Plaintiffs do not mention the *Kasilag* ruling in their opposition, they do erroneously suggest that two other recent decisions (both of which pre-date *Kasilag*) support their effort to create a Section 36(b) claim from just PI's portion of the management fees. *American Chemicals* (Opp. 14 n.12) does not concern a "manager of managers" such as PI, but rather a wholly different fund structure known as a "fund of funds" in which the subject mutual fund itself invests in other mutual funds managed by other advisers. *Am. Chemicals & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, 2014 WL 5426908, at *1 (S.D. Iowa Sept. 10, 2014). *Blackrock*, which Plaintiffs describe as "reject[ing]" the argument that there are differences between advisory and subadvisory duties (Opp. 18 n.15), held no such

**C.      Plaintiffs Cannot State A Section 36(b) Claim While Ignoring Publicly-Available, Judicially-Noticeable Facts Regarding PI's Below-Average Fees**

In addition to failing to allege a key element of their claim under *Jones* (the bargaining range for PI's fees) and seeking to rely on a legal concept now rejected by *Kasilag*, Plaintiffs also ask the Court to disregard the indisputable fact of the Funds' generally below-average fees. Plaintiffs urge the Court to ignore PI's fees, even though they are fully disclosed in the SEC filings Plaintiffs cite, because they expose the error of Plaintiffs' claim that PI's fees are legally "excessive."[36]  Indeed, based on comparisons conducted by the respected independent source Lipper and provided to the Independent Trustees in reviewing and approving the Management Agreements, the management fees charged by PI generally were below, and in many instances well below, the management fees charged to comparable funds.[37]  Plaintiffs' opposition, like their Complaint, offers no evidence or allegation to the contrary.  Instead, Plaintiffs merely argue that any reference to the incontrovertible facts concerning PI's fees is "inappropriate on a motion to dismiss."[38]  But the standard on this motion requires the Court to dismiss a complaint that is fatally defective, rather than overlook critical defects as Plaintiffs urge.

It is not persuasive to argue, as Plaintiffs do, that the Court is duty-bound to disregard the contents of the SEC filings referenced throughout PI's moving brief (as well as the Complaint)

---

thing; the court simply found that argument to be "beyond the scope of this motion," and deferred its resolution until after discovery. *In re Blackrock Mut. Funds Advisory Fee Litig.*, 2015 WL 1418848, at *5 & n.5 (D.N.J. Mar. 27, 2015).

[36]      *E.g.*, Opp. 3-4, 17-18.

[37]      *See* Br. 20-21; *see also* 2014 Growth Fund AR at 53; 2015 Mid-Cap Growth Fund AR at 58; 2014 Natural Resources Fund AR at 58; 2014 Global Real Estate Fund SAR at 44; 2014 Short Term Corp. Bond Fund AR at 89; 2014 Equity Income Fund AR at 64.

[38]      *E.g.*, Opp. 17. Plaintiffs also contend that all "peer fund comparisons" are unpersuasive, citing Judge Posner's dissent from the Seventh Circuit's denial of rehearing *en banc* in *Jones*. *Id.* at 28.  But as the Supreme Court itself stated, "The debate between the Seventh Circuit panel and the dissent from the denial of rehearing regarding today's mutual fund market is a matter for Congress, not the courts." *Jones I*, 559 U.S. at 353.  Judge Posner's dissent furnishes no support for Plaintiffs' argument.

because these mandatory SEC filings that they and other Fund shareholders receive are "attorney-prepared" and purportedly "self-serving."[39] Not only does this argument fail to contest the accuracy of the information, but SEC filings like those at issue are, after all, required by law to be filed,[40] and doing so without competent counsel would hardly be in the interests of investors. No court has embraced Plaintiffs' logic. To the contrary, Fourth Circuit precedent affirmatively authorizes this Court, on a motion to dismiss, to "take judicial notice of the content of relevant SEC filings and other publicly available documents included in the record."[41] By the same token, numerous other courts considering motions to dismiss Section 36(b) claims have also appropriately taken judicial notice of facts contained in SEC filings.[42] The simple truth is that Plaintiffs' reliance on these very same publicly-available materials in framing their Complaint[43] (as well as throughout their opposition on this motion[44]), makes it legally quite clear

---

[39]   Opp. 3, 17.

[40]   *See* 17 C.F.R. § 270.30b2-1, 15 U.S.C. § 80a-29.

[41]   *Yates v. Mun. Mortg. & Equity, LLC,* 744 F.3d 874, 881 (4th Cir.), *cert. denied sub nom. Dammeyer v. Mun. Mortg. & Equity, LLC,* 135 S. Ct. 113 (2014); *see Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.,* 2011 WL 1348324, at *6 n.3 (E.D. Va. Apr. 8, 2011) ("A court may take judicial notice of SEC filings when ruling on a motion to dismiss.").

[42]   *E.g., Redus-Tarchis v. New York Life Inv. Mgmt. LLC,* 2015 WL 6525894, at *11 (D.N.J. Oct. 28, 2015) (taking judicial notice of "SEC filings in the public record demonstrating that the Board did *not* simply react passively to information provided by [the adviser]," but instead "engaged two 'independent, third-party' consulting firms") (emphasis in original); *Kenny v. Pac. Inv. Mgmt. Co. LLC,* 2015 WL 10635505, at *3 (W.D. Wash. Aug. 26, 2015) (taking judicial notice of "public documents filed with the Securities and Exchange Commission, publicly available rankings and reports published by Morningstar, [and] industry articles quoted in the Complaint"); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.,* 2006 WL 74439, at *2 (S.D.N.Y. Jan. 11, 2006) (taking judicial notice of facts in fund annual report that "dilute the lone facts supporting Plaintiffs' claim").

[43]   *See, e.g.,* Compl. ¶¶ 29 n.15, 46 n.22. Plaintiffs' assertion that these same SEC filings should be disregarded because they are "outside the four corners of the Complaint" (Opp. 17) therefore defies logic.

[44]   *See, e.g.,* Opp. 8 n.10, 29-32.

that the Court is "not required to ignore facts" included in such materials—even on a motion to dismiss.[45]

Moreover, although Plaintiffs fail to allege the facts necessary to support a claim that management fees and subadvisory fees should be viewed separately, the Court is not required to ignore publicly-available information in SEC filings that further contradicts the viability of Plaintiffs' claim.  Plaintiffs do not attempt to allege a bargaining range for even the "retained" portion of PI's fees, which as explained above is fatal to their claim.  But even if they tried, their effort would fail.  For one of the six Funds (the Growth Fund), the PI-affiliated subadviser (Jennison) utilizes the same strategy for both the Growth Fund and other mutual funds.[46]  As it turns out, the applicable SEC filings indisputably demonstrate that PI's fee from the Growth Fund is considerably <u>less</u> than the total management fee (at the Growth Fund's AUM level) that would be paid by each of the comparable funds that Jennison also subadvises.

|  | Growth Fund | Harbor Fund[47] | JHF Fund[48] | Transamerica Fund[49] |
|---|---|---|---|---|
| Total Mgmt. Fee | 57.8 bps | 60 bps | 69.97 bps | 64.3 bps |

Moreover, even if one were to consider, *arguendo,* Plaintiffs' theory by dividing up the management fee between the adviser and the subadviser, PI retains <u>less</u> of the total advisory fee

---

[45]    *E.g., Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, 948 F. Supp. 2d 525, 532 (D. Md. 2013) ("[W]hen a 'document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint.'"), *aff'd*, 593 F. App'x 204 (4th Cir. 2014) (citation omitted); *Tabankin v. Kemper Short-Term Glob. Income Fund*, 1994 WL 30541, at *3 (N.D. Ill. Feb. 1, 1994) (the court is "not required to ignore facts" set forth in documents on which the complaint relies).

[46]    These funds are the Harbor Capital Appreciation Fund ("Harbor Fund"), the John Hancock Funds II Capital Appreciation Fund ("JHF Fund"), and the Transamerica Growth Fund ("Transamerica Fund").

[47]    *See* Harbor Funds SAI (Mar. 1, 2016) at 48 *available at* http://hosted.rightprospectus.com/HarborFunds/Fund.aspx?dt=S&ts=HACAX.

[48]    *See* John Hancock Funds II Information Statement (Mar. 1, 2010), *available at* https://www.sec.gov/Archives/edgar/data/1331971/000095012310019088/0000950123-10-019088.txt.

[49]    *See* Transamerica Funds Prospectus at 72 (Mar. 1, 2015), *available at* https://www.sec.gov/Archives/edgar/data/787623/000119312515078900/d875351d497.htm.

for the Growth Fund than does the adviser under the fee schedules for each of these directly-applicable comparator funds that disclose this information:[50]

|  | Growth Fund | JHF Fund[51] | Transamerica Fund[52] |
|---|---|---|---|
| Total Mgmt. Fee | 57.8 bps | 69.97 bps | 64.3 bps |
| Subadvisory Fee | 25.5 bps | 24.97 bps | 24.97 bps |
| Fee Retained By Adviser | 32.3 bps (55.9%) | 45 bps (64.3%) | 39.3 bps (61.2%) |

In other words, under the arrangement negotiated by the Independent Trustees and agreed to by PI, shareholders in the Growth Fund not only enjoy the benefits of the investment services provided by Jennison, a well-respected subadviser, but they indisputably pay a <u>lower</u> overall fee than is paid by other funds utilizing the same subadviser—and PI indisputably "retains" a <u>smaller</u> portion of this lower overall fee than do the advisers to these comparable funds. Accordingly, regardless of how measured, Plaintiffs cannot plausibly allege that the management fees paid by the Funds to PI fall outside any putative "bargaining range."

### D.   Plaintiffs Cannot State A Section 36(b) Claim By Resting On Distinguishable Decisions Denying Motions To Dismiss Other Section 36(b) Complaints

Rather than confront *Jones* substantively, Plaintiffs repeatedly cite to the recent denial of motions to dismiss in other cases in different jurisdictions.[53] The fact that other courts have denied motions to dismiss does not render this Court powerless to grant such a motion, particularly where, as here, Plaintiffs' Complaint fails to allege facts capable of meeting the applicable legal standard and relies on a legal theory that has been rejected as a matter of law.

---

[50]   The Harbor Fund does not publicly disclose its subadvisory fee schedule.

[51]   John Hancock Funds II Information Statement.

[52]   Transamerica Funds Prospectus at 72.

[53]   *E.g.* Opp. 14-15, 18, 24, 27.

As an initial matter, all of Plaintiffs' decisions were issued <u>before</u> the District of New Jersey's ruling in *Kasilag* (rejecting the core premise in the "manager of managers'" complaints that the challenged management fees/services can be severed to exclude the subadviser), and none of those courts was asked to consider the Seventh Circuit's ruling in *Jones II* (reinforcing the need for a plausible "bargaining range" and holding that an adviser who charges below-average fees and delivers above-average performance cannot be found to have charged "excessive" fees under Section 36(b)[54]). The kinds of allegations in Plaintiffs' Complaint—and Plaintiffs' position that they need not allege a bargaining range to plead that PI's fees fall outside that range—have now been rejected as legally insufficient by *Kasilag* and *Jones II*. Further, unlike PI, none of the "manager of managers" targeted in Plaintiffs' decisions charged demonstrably below-average fees while delivering demonstrably favorable performance for the funds' shareholders—viz., bedrock facts wholly inconsistent with an excessive fee claim. As such, discovery cannot cure the fundamental legal shortcomings of Plaintiffs' Complaint.

With the current state of the Section 36(b) case law—including *Jones II* and *Kasilag*—and the indisputable facts regarding PI's fees/performance and the corporate affiliation between PI and the subadvisers—the Complaint now before this Court is ripe for dismissal.[55]

---

[54]    Plaintiffs attempt to avoid *Jones II* altogether by contending that "the plaintiffs in *Jones II*, unlike Plaintiffs here, did not challenge the reasonableness of the fee disparity between the investment adviser and its subadvisers." Opp. 12. That purported distinction is meaningless, as *Jones II* is not constrained to any artificial subset of fee comparisons. And in any event, the *Jones II* court ultimately rejected plaintiffs' claim, as a matter of law, <u>because</u> they failed to "compare[e] the fees [the adviser] received from public mutual funds with the fees that other similar funds have paid to different advisers (the Supreme Court's question about arm's length bargaining)." 611 F. App'x at 361.

[55]    Finally, although Plaintiffs contend that every motion to dismiss granted prior to *Jones* is distinguishable solely because it was decided prior to *Jones* (Opp. 16), the reality is that *Jones* only raised the Section 36(b) bar for a plaintiff. As the Seventh Circuit recognized in *Jones II*, "the Supreme Court's standard is less favorable to plaintiffs" than the *Gartenberg* standard, because unlike *Gartenberg*, *Jones* mandates that a court must "identify the outer bounds of arm's length bargaining" and "does not allow a court to assess the fairness or reasonableness of advisers' fees." *Jones II*, 611 F. App'x at 360.

## II.   PLAINTIFFS' REMAINING *GARTENBERG* FACTOR ALLEGATIONS ARE BOTH IRRELEVANT AND INSUFFICIENT

As explained in PI's moving brief, the so-called "*Gartenberg*" factors do <u>not</u> equate to the elements of a Section 36(b) claim; they therefore are <u>not</u> a substitute for Plaintiffs to meet the *Jones* requirement of alleging facts that establish the bargaining range for PI's fees.[56] Hence, given Plaintiffs' failure to allege a bargaining range for PI's management fees, the Court can dismiss the Complaint for failing to state a claim under *Jones* without having to rule on Plaintiffs' efforts to allege various *Gartenberg* factors.

However, as demonstrated herein, even if Plaintiffs' *Gartenberg* allegations had to be considered, they would not lend any credence to their Section 36(b) claim.

### A.   Plaintiffs' Unsupported Allegation Of "Significant Underperformance" By The Funds Cannot Salvage Their Claim

As a threshold matter, Plaintiffs suggest that the Funds' performance is irrelevant because "[e]ven the most knowledgeable advisers do not always perform up to expectations, and investments themselves involve quite different magnitudes of risk."[57] It is certainly true that investments do not always pan out as hoped or planned, and in the Section 36(b) context it is certainly true that fund performance is not the sole indicator of the quality of services provided by an adviser.  But the fact that underperformance does not necessarily establish the poor quality of services does not mean that <u>outperformance</u> is meaningless.  Rather, as the *Jones II* court correctly recognized, outperformance relative to peer funds strongly suggests that an adviser has "delivered value for money" for the benefit of shareholders.[58]

---

[56]   Br. 27.

[57]   *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327-28 (4th Cir. 2001).

[58]   *Jones II*, 611 F. App'x at 361.

PI undeniably has "delivered value for money" for the benefit of the Funds' shareholders. As set forth in PI's moving brief and the Funds' SEC filings, the Funds' Independent Trustees annually request and consider information from Lipper regarding the Funds' performance over a variety of time horizons relative to the Funds' respective benchmark indices and peer funds.[59]   At the June 2014 Board meeting at which the Independent Trustees approved Management Agreements for the Funds covering the majority of the period under attack in this case (i.e., October 30, 2014 to July 31, 2015[60]), the Independent Trustees received and considered Lipper information showing that the Funds generally had delivered strong performance relative to their defined benchmark indices and peer funds over short, medium, and long-term horizons.[61] Plaintiffs do not attempt to argue that this publicly-available information is inaccurate.

Furthermore, the Funds' SEC filings and shareholder reports concerning the Independent Trustees' June 2015 review and approval of the Funds' Management Agreements going forward (i.e., for the period from August 1, 2015 to July 31, 2016) reveal that the Independent Trustees again received and considered Lipper information showing that the Funds generally continued to deliver favorable performance relative to their defined benchmark indices and peers over short, medium, and long-term horizons.[62]  Plaintiffs do not mention this performance information.

---

[59]      Br. 19.

[60]      Section 36(b) expressly limits a plaintiff's recovery to the one year prior to the filing of the complaint (15 U.S.C. § 80a-35(b)(3)).  The Complaint here was filed on October 30, 2015, which thereby results in a start-date of October 30, 2014 for Plaintiffs' claims.

[61]      Br. 19-20.

[62]      The relevant excerpts from the Funds' 2015 SEC filings are collected in Ex. 1 hereto.  Although this information was not filed with the SEC until shortly after Plaintiffs filed their Complaint, it was publicly available for several months before Plaintiffs filed their opposition to the present motion.

Plaintiffs cannot meet their burden by ignoring such facts and instead reaching outside their Complaint—which is impermissible in opposing a motion to dismiss[63]—to cite data snippets that are misleadingly excerpted and packaged for litigation purposes, to suggest "significant underperformance."[64]  Plaintiffs' concocted pro forma performance comparisons should be rejected because, among other things: (i) they are not in the Complaint; (ii) they come from a non-uniform series of time periods distinct from those considered by the Independent Trustees when approving the Management Agreements;[65] (iii) Plaintiffs select irrelevant performance comparisons to the S&P 500 Index, when none of the Funds is designed to track this index;[66] and (iv) Plaintiffs also seek to compare Fund returns net of sales charges to benchmark indices and Lipper group averages which do not include sales charges.[67]  Plaintiffs' litigation-based comparisons thus skew the investment performance of the Funds relative to the benchmarks Plaintiffs cite.  For Plaintiffs to criticize the Funds' "significant underperformance"

---

[63]     See, e.g., Marks v. Dann, 600 F. App'x 81, 89 (4th Cir. 2015) (where plaintiff submitted additional documents in opposition to motion to dismiss, "[t]he district court properly deemed these matters outside the complaint and refused to consider them as part of its Rule 12(b)(6) analysis.").

[64]     Opp. 29-32.

[65]     The Lipper performance information provided to the Independent Trustees as part of their annual review of the Management Agreements runs through December 31 of the preceding year, i.e., December 31, 2013 for the June 2014 meeting, etc. See, e.g., 2014 Growth Fund AR at 52-53.  Plaintiffs, in contrast, extracted performance information from their own self-selection of the Funds' Annual Reports in either 2014 or 2015, none of which tracks performance through December 31 of any year. See Opp. 29-32 and documents cited in nn. 22-27 therein.

[66]     See, e.g., 2016 Growth Fund SAI at 3, available at http://prospectus-express.newriver.com/PNet/summary.asp?clientid=pi&fundid=74437E107&doctype=sai (stating that the Growth Fund seeks to achieve long-term growth of capital by investing primarily in equity and equity-related securities of established companies with above-average growth prospects). See also Turner ex rel. Davis New York Venture Fund v. Davis Selected Advisers, LP, 626 F. App'x 713, 717 (9th Cir. 2015) (rejecting the assertion that services were poor because the fund at issue underperformed the S&P 500 Total Return Index because "unlike an index fund, the Davis Fund is an actively managed fund" following a non-index strategy).

[67]     See, e.g., 2015 Growth Fund AR at 4, available at https://www.sec.gov/Archives/edgar/data/949512/000119312515387421/d10980dncsr.htm (emphasis added).

by citing such data of their own creation rather than the third-party information considered by the Independent Trustees, is the sort of "nitpicking"[68] that the Court can and should reject.

**B.   Plaintiffs' Conclusory And Legally Unsustainable Economies Of Scale Allegations Cannot Salvage Their Claim**

Plaintiffs' economies of scale argument largely relies on purportedly "well established" lore applicable across the entire "mutual fund industry."[69]  Plaintiffs then point to the growth in AUM the Funds have enjoyed "in recent years," and allege that the advisory fee paid to PI (measured in dollars, not basis points) has increased during that period of time.  From those dots, Plaintiffs try to connect to the unsupported conclusion that "the growth of [PI's] fees has greatly outpaced the growth of its costs, resulting in economies of scale."[70]

No Section 36(b) plaintiff has ever prevailed at trial, or avoided summary judgment, on such thin allegations.  Many have had their complaints dismissed at the pleading stage.[71]  Indeed, among the recent Rule 12(b)(6) decisions upon which Plaintiffs exclusively rely for support, equally conclusory economies of scale allegations have been held not to support a plausible Section 36(b) claim.[72]

---

[68]    *Kasilag*, 2016 WL 1394347, at *10, 14.

[69]    Opp. 20.

[70]    *Id.* at 21.

[71]    *See*, in addition to the authority cited at Br. 38-40, *Turner*, 626 F. App'x at 717 (affirming Rule 12(b)(6) dismissal; "[Plaintiff's] Complaint offers no explanation of what percentage of [the adviser's] work was spent researching specific investments.  As a result, [Plaintiff's] allegations regarding economies of scale also fail to support an inference that the advisory fee [the adviser] charged bore no reasonable relationship to the services rendered.").

[72]    *See Chill v. Calamos Advisors LLC*, 2016 WL 1258984, at *11 (S.D.N.Y. Mar. 28, 2016) ("[T]hese [economies of scale] allegations standing alone . . . would not state a plausible claim for relief under § 36(b).").

### C. Plaintiffs' Conclusory And Legally Unsustainable Profitability Allegations Cannot Salvage Their Claim

As concerns their conclusory contention that the portion of the management fee retained by PI "amounts mostly to profits," Plaintiffs' opposition, like their Complaint, fails to provide any allegation regarding PI's actual costs incurred in providing services to the Funds, particularly in exercising oversight over the services provided by the subadvisers.[73]   Nor do Plaintiffs attempt to account for the fact that the subadvisers and PI are corporate affiliates,[74] meaning that their individual respective profitability is not as separable, or as meaningful, as Plaintiffs conclusorily contend.   Plaintiffs' profitability allegations therefore remain legally deficient and do not support the assertion that PI charged excessive fees.[75]

In addition, Plaintiffs' profitability allegations also fail under the logic of *Kasilag*.   In light of *Kasilag*'s recognition that there is no legal basis to distinguish between the portion of the management fee retained by the adviser and the portion paid to the subadviser, Plaintiffs' profitability allegations—which are premised on such a devised distinction between PI and the Funds' affiliated subadvisers—should be disregarded as a matter of law.[76]

## III. PLAINTIFFS FAIL TO PROVIDE A PLAUSIBLE BASIS FOR THE COURT TO OVERTURN THE INDEPENDENT TRUSTEES' BUSINESS JUDGMENT IN APPROVING THE MANAGEMENT AGREEMENTS WITH PI

In their effort to avoid the "considerable weight" that *Jones* instructs is to be afforded to the business judgment of independent, informed, and conscientious trustees in approving

---

[73]   *See* Br. 34-36.

[74]   *See id.* at 10 n.43.

[75]   *See id.* at 38 n.162.

[76]   *Kasilag*, 2016 WL 1394347, at *15.

advisory fee arrangements (such as between PI and the Funds), Plaintiffs again mischaracterize of the applicable and settled legal principles.

### A.   Plaintiffs Invoke An "Inherent Conflict Of Interest" Between PI And The Independent Trustees That No Court Has Recognized

The "inherent conflict of interest" cited by Plaintiffs in support of their argument against the "considerable weight" that must be given to the Independent Trustees' approval of PI's has not been recognized by *Jones* or any other Section 36(b) case cited by Plaintiffs.  To the contrary, as the Supreme Court long ago explained, a mutual fund's independent trustees are the "independent watchdogs" who "furnish an independent check upon the management of investment companies" and "provide a means for the representation of shareholder interests in investment company affairs."[77]  As such, the Supreme Court further explained that the ICA's independent trustee requirement is "[t]he cornerstone of the ICA's effort to control conflicts of interest within mutual funds."[78]  And even further, "Congress surely would not have entrusted such critical functions as approval of advisory contracts . . . to the statutorily disinterested directors had it shared the [] view that such directors could never be 'disinterested'. . . ."[79]  Thus, not only is there no "inherent conflict of interest" between PI and the Independent Trustees, but the Independent Trustees are the ICA's primary solution to the potential conflict between the adviser and the fund arising out of the fee approval process.[80]

---

[77]     *Burks*, 441 U.S. at 484 (emphasis added) (internal citations omitted).

[78]     *Id.* at 482.  The pertinent potential conflict is between fund and adviser, not between adviser and the independent trustees.

[79]     *Id.* at 485 n.15.

[80]     Indeed, even the same 1992 SEC Report that Plaintiffs cite in their Opposition (Opp. 8 n.9) concludes that "[t]he oversight function performed by investment company boards of directors, especially the 'watchdog' function performed by the independent directors, has served investors well, at minimal cost." Securities and Exchange Comm'n, Div. of Investment Mgt., *Protecting Investors: a Half Century*

**B.    Plaintiffs' Confusion About The "Considerable Weight" Due To The Independent Trustees' Considered Business Judgment Under *Jones* Further Undermines Their Claim**

*Jones* recognizes that "[w]here a board's process for negotiating and reviewing investment adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process.  Thus, if the disinterested directors considered the relevant factors, their decision to approve a particular fee agreement is entitled to <u>considerable weight</u>, even if a court might weigh the factors differently."[81]  Plaintiffs try to avoid this direction from the *Jones* Court by suggesting that "a Board must *earn* the deference [PI] requests; it is not automatic."[82]  Plaintiffs thus seek to turn *Jones* on its head: given the indisputable judicially-noticeable facts showing that those Independent Trustees contracted, on behalf of the Funds' shareholders, for PI to receive below-average fees while delivering favorable performance (viz., "deliver[ing] value for money"[83]), Plaintiffs need to come forth with a plausible basis for calling into question that business judgment.  Plaintiffs fail to do so.  As a result, deference to the Independent Trustees' business judgment is appropriate.[84]

Plaintiffs next contend that they allege sufficient facts to rebut any deference owed to the Independent Trustees' business judgment because the Independent Trustees did not negotiate lower fees or more breakpoints.[85]  Putting aside that five of the six Funds already have breakpoints and that the Independent Trustees did in fact negotiate additional breakpoints for the

---

*of Investment Company Regulation* at 253 (May 1992), *available at* http://www.sec.gov/divisions/investment/guidance/icreg50-92.pdf.

[81]    *Jones I*, 559 U.S. at 351 (emphasis added).

[82]    Opp. 38 (emphasis in original).

[83]    *Jones II*, 611 F. App'x at 361.

[84]    *Accord Redus-Tarchis*, 2015 WL 6525894, at *11 (on Rule 12(b)(6) motion, granting "'considerable weight' to the independent Board's approval of [the adviser's] management fees").

[85]    Opp. 36.

Equity Income Fund in 2014,[86] the law is clear that Independent Trustees need <u>not</u> negotiate "the 'best deal' possible" to comply with the ICA.[87]  To the contrary, Congress specifically rejected such a standard, explaining that Section 36(b) was not "intended to imply otherwise or to suggest that a 'cost plus' type of contract would be required," nor was it "intended to introduce general concepts of rate regulation as applied to public utilities."[88]  Courts across the country have uniformly recognized this same point for more than 35 years.[89]

Furthermore, the Board did not "serve[] merely as a passive receptor of information" provided by PI.[90]  Instead, as described in the Funds' SEC-filed reports to shareholders upon which Plaintiffs' Complaint is based, it is indisputable that the Board "retained an outside business consulting firm, in order to assist the Board in its consideration of the renewal of the management and subadvisory agreements, by reviewing management fee breakpoint usage and trends in management fees across the mutual fund industry."[91]  The consulting firm's "analysis and conclusions with respect to the Funds' management fee structures" were presented during a December 2013 board meeting, and "were discussed extensively by the Board and PI over the

---

[86]   Br. 21 n.86.

[87]   *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989) (rejecting plaintiff's claim that "the trustees had a duty to negotiate for the Fund the 'best deal' possible").

[88]   S. Rep. No. 91-184 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, at *4902 (1970).

[89]   *See Krinsk*, 875 F.2d at 409; *Kasilag*, 2016 WL 1394347, at *12 ("The inquiry . . . is not whether a better deal could hypothetically have been reached."); *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 2016 WL 759654, at *8 (S.D. Ohio Feb. 26, 2016) ("The ICA certainly does not guarantee the funds the best deal possible or even a good deal."); *In re Am. Mut. Funds Fee Litig.*, 2009 WL 5215755, at *2 (C.D. Cal. Dec. 28, 2009) ("[E]vidence that a better deal could have been struck would not establish a violation of Section 36(b)."), *aff'd sub nom. Jelinek v. Capital Research & Mgmt. Co.*, 448 F. App'x 716 (9th Cir. 2011); *Gartenberg*, 528 F. Supp. at 1047 ("[I]t is not enough for th[e] Court to find that a better bargain was possible.").

[90]   Opp. 39.

[91]   Br. 22 n.93.

following two quarters."[92]  This type of active engagement by the Board of each of the Funds is yet another factor supporting the "considerable weight" that is owed to the business judgments reached by the Funds' Independent Trustees in approving PI's management fees.[93]

### C. Plaintiffs Cannot Meet Their Pleading Burden By Circularly Alleging That The Board Lacked Independence Because PI's Fees Were Too High

Plaintiffs' Opposition also reprises the same formulaic board allegations found in their Complaint.[94]  But this is of no avail, as these circular and conclusory allegations already have been rejected as insufficient to question the independence, care, and conscientiousness of the Funds' Independent Trustees.

For example, in *Redus-Tarchis*, the most recent decision on a motion to dismiss in a "manager-of-managers" case, the court rejected attacks on those independent trustees' independence and conscientiousness that are nearly identical to those made here.[95]  The *Redus-Tarchis* court found such allegations "insufficient for Plaintiffs to meet their burden to show that the Board was not independent or conscientious in its approval of [the adviser's] fees."[96]  Even though that court ultimately denied the motion to dismiss on other grounds, it held that the trustees were both independent and conscientious in their review and approval of the pertinent management agreements, specifically finding that the funds' SEC filings "contradict Plaintiffs' claims that the Board did not exercise independence or conscientiousness in approving Defendant's management fees."[97]

---

[92]     *Id.*

[93]     *Redus-Tarchis*, 2015 WL 6525894, at *11.

[94]     Opp. 35-37.

[95]     *Compare Redus-Tarchis*, 2015 WL 6525894, at *10-11 *with* Compl. ¶¶ 72-77.

[96]     2015 WL 6525894, at *11.

[97]     *Id.*

Even more recently, the *Kasilag* court rejected plaintiffs' arguments impugning the independence, care, and conscientiousness of the funds' independent trustees, finding that they amounted to no more than "armchair quarterbacking" and "captious nit-picking."[98]  Indeed, *Kasilag* recognized that crediting such arguments "would put defendants in the untenable posture of defending interminable, manufactured, and protracted litigation involving second-guessing a board's process."[99]  As the court further found, "Such carping, if sufficient, would eviscerate the deference that is to be paid to an informed Board's process under *Jones*."[100]

Plaintiffs' allegations here regarding the Funds' Boards are no more persuasive.  They are devoid of plausible facts, contrary to the Funds' publicly-filed SEC public documents, and are indistinguishable from the "carping" rejected in *Kasilag*.  As such, they similarly fail to call into question the independence of the Independent Trustees or their conscientiousness in reviewing and approving PI's fees.  "Considerable weight" therefore should be given to the Independent Trustees' business judgment approving the Funds' fee arrangements with PI—which provides further reason for the Court to dismiss Plaintiffs' claim.

## CONCLUSION

For the foregoing reasons, as well as those set forth in PI's moving brief, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

Dated: May 20, 2016

[signature on next page]

---

[98]     *Kasilag*, 2016 WL 1394347, at *14.

[99]     *Id.*

[100]    *Id.*

Respectfully Submitted,

/s _____

**KRAMON & GRAHAM, P.A.**
Geoffrey H. Genth, Bar No. 08735
William J. Harrington, Bar No. 03863
One South Street, Suite 2600
Baltimore, MD  21202
ggenth@kg-law.com
wharrington@kg-law.com
Tel.: (410) 752-6030
Fax: (410) 539-1269

**DECHERT LLP**
Matthew L. Larrabee (admitted *pro hac vice*)
David A. Kotler (admitted *pro hac vice*)
Deborah Kemi Martin (admitted *pro hac vice*)
Catherine V. Wigglesworth (admitted *pro hac vice*)
1095 Avenue of the Americas
New York, NY  10036-6797
matthew.larrabee@dechert.com
david.kotler@dechert.com
deborahkemi.martin@dechert.com
catherine.wigglesworth@dechert.com
Tel.: (212) 698-3500
Fax: (212) 698-3599

*Attorneys for Defendant Prudential Investments*
*LLC*